UNITED STATES DISTRICT COURT

**FILED**

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

HECTOR SANTIAGO,

Crim. No. 3:02cr162(SRU)

2005 DEC -8  A II: 32

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

This Memorandum is respectfully submitted on behalf of defendant Hector Santiago in support of his request for resentencing in consideration of the United States Supreme Court decision in *United States v. Booker,* 543 U.S. ___, 125 S.Ct. 738 (2005) and the Second Circuit decision in *United States v. Crosby,* 397 F.3d 103 (2d Cir. 2005). Defendant submits that a nontrivially different sentence would be appropriate in the instant case.

The government's Memorandum offers a detailed account of the evidence presented at trial. Essentially, the defendant was convicted of possession of a weapon by a convicted felon. The weapon was not being used in the course of commission of any other crime, but supposedly was possessed by the defendant and thrown by him while being chased by police officers. At trial, defendant argued that the police officers' testimony was not credible, but the jury apparently resolved all such questions in favor of the government.

The government's Memo also provides a brief account of the appeal. Govt. Memo at 6-7. Defendant would only add that he had made a timely request for resentencing that was not acted upon by the Court of Appeals Clerk's Office. He thereupon moved to recall the mandate, and attached proof of filing of the original request for resentencing. That is the reason for the delay of several months in the remand of this case.

It is respectfully submitted that this Court should consider imposing a nontrivially different sentence in this matter. At the outset, it is true that the Court already has downwardly departed with respect to criminal history category. The Court carefully considered the defendant's criminal record and concluded that category VI was too harsh to reflect defendant's actual criminal history. Mr. Santiago did not receive any undeserved windfall by the Court's downward departure on

criminal history category. He simply was treated appropriately. To sentence him under category VI would have been manifestly unfair, as the Court found. However, having departed horizontally, the Court did feel constrained to sentence him within the Guidelines range for the reduced criminal history category.

The government blurs the distinction between the "horizontal" criminal history category departure and a downward departure based upon the circumstances of this offense. Thus, the government concludes that "the Court sentenced the defendant without regard to the mandatory guideline range" (Memo at 11) and that "the fact that the Court granted the request and departed below the applicable guideline strongly suggests that the mandatory nature of the guidelines did not constrain the Court's sentencing decision." Memo at 12. Defendant disagrees with this analysis, and suggests that the Court properly separated the issue of criminal history category from the other issues presented. Having determined pursuant to USSG § 4A.1.3, on the basis of truly compelling facts, that the criminal history category should be considered IV rather than VI, the Court then proceeded to treat the Guidelines as mandatory. The Court apparently did feel "constrained" to sentence within the range determined by the horizontal departure. The government's portrayal of the sentencing in almost pre-Guideline (or post-*Booker*) terms is a gross overstatement.

Thus, the Court's original sentence was fully consistent with the then-existing sentencing scheme which authorized the criminal history departure for specific reasons but required adherence to the applicable range of sentences. The law has changed in light of the *Booker* holding that the Guidelines are not mandatory, and defendant respectfully requests that this Court reconsider the question of whether Mr. Santiago should be sentenced within the Guidelines range. We do not seek a further reduction in criminal history category, but a different departure based on equally compelling facts with respect to the commission of the instant crime.

This application is based upon two major considerations. First, Mr. Santiago was subject to far greater penalties under this federal prosecution than he would have faced had been

-2-

prosecuted in state court. As the Court knows, Mr. Santiago was arrested by the City of Bridgeport Police Department for a crime -- possession of a weapon -- that is traditionally considered within the purview of state law. He initially was charged in Connecticut State Court but ultimately the federal government assumed prosecution solely on the basis of evidence that the gun had been manufactured outside the State of Connecticut, and thus must have been transported across state lines at some point during its existence. This factor, while found to be sufficient to invoke federal jurisdiction, is inconsequential in terms of public safety, as the gun was rendered no more dangerous by its transport to Connecticut, nor was it more dangerous than any similar weapon produced within the state.

Mr. Santiago's prosecution by federal authorities was a decision entirely outside his control, and utterly inconsequential in terms of the seriousness of the offense. Nevertheless, the decision to do so exposed Mr. Santiago to considerably greater penalties than if he had been prosecuted in state court.

Under the Guidelines, Mr. Santiago, with a category IV criminal history deemed appropriate by this Court, was exposed to a sentencing range of 92 to 115 months, and the Court sentenced him toward the lower end of that range. However, for the same crime -- possession of a weapon by a convicted felon -- Mr. Santiago would have faced a maximum sentence of five years and a minimum of two years, or an effective range of 24 to 60 months, had he been prosecuted in Connecticut State Court (see C.G.S.A. §§ 53a-35a, 53a-217). He may not have had a right to insist on state rather than federal prosecution, but there is no reasonable explanation for the gross disparity in sentencing decided by the somewhat arbitrary decision to pursue a federal rather than state prosecution. Indeed, it is precisely such disparities that the Guidelines themselves were promulgated to address. It is ironic that in this case, the Guidelines, if strictly adhered to, would result in a model of the very unfairness that they were designed to alleviate.

In fact, Mr. Santiago informs me that he had been offered a guilty plea in state court in return for a promised sentence of three years, and that after he refused the offer, prosecution was

assumed by the federal government. The presentence report (¶ 32) confirms that he initially was charged in Bridgeport Superior Court under Docket No. CR01-1755559. Given the sentencing range in that court of two to five years, a plea offer of three years appears most plausible. Indeed, had he pled guilty at his first opportunity with no promise at all, he could have received only a maximum of five years in prison, three years less than the 96-month sentence eventually imposed.

It is true that this Court, when the Guidelines were considered mandatory, declined to downwardly depart on offense level and did not even give Mr. Santiago the minimum under the Guidelines range, although the sentence of 96 months is very close to the minimum of 92. However, there is now more flexibility in using the Guidelines, which were made advisory rather than discarded entirely for the primary purpose of continuing to ensure more uniformity and less disparity in sentencing, that is, in the interest of fairness. The disparity between federal and state sentencing should not be ignored in this calculus, especially where the vast majority of prosecutions for gun possession in Connecticut presumably are made by the state, with its much lower sentencing scheme, rather than by the federal government.

With respect to the factors enumerated in § 3553(a), recited by the government at p. 9 of its Memorandum, they generally would support resentencing, especially "the need to avoid unwarranted sentencing disparities." A sentence more in accordance with the range set by the applicable Connecticut statutes would adequately serve the goals of the criminal justice system such as deterrence and protection of the public. In addition, a reduced sentence would be more reflective of just punishment as viewed by the people of Connecticut through their elected representatives.

There is a second compelling reason for downwardly departing from the Guidelines range. Mr. Santiago was sentenced with a base offense level of 24 (and a total of 26) based on the fact that he had two prior felony drug convictions. Had he been convicted only once previously, the base offense level would have been 20 with a final total of 22. A closer look at his prior felony drug convictions reveals that 20 would be a more appropriate base offense level. Mr. Santiago

was arrested twice in January, 1993, and charged with possession and/or sale[1] of relatively small amounts of marijuana (both amounts totalling about five grams) and on the second arrest cocaine as well (seven grams).[2] He ultimately pled guilty to both of the charges on the same day and was sentenced therefor. While these facts might technically qualify for two separate drug convictions, they more clearly resemble a single incident in his life; the arrests occurred 11 days apart (eight years before the instant offense), both were for small quantities of drugs, and both were resolved at the same time by a guilty plea at the same time resulting in concurrent sentences. It is respectfully submitted that it would be appropriate to downwardly depart on offense level for this reason as well.

In fact, the Court, in downwardly departing in criminal history category, already has expressed its opinion that the two 1993 convictions involving small quantities of drugs, when rigidly counted against Mr. Santiago, do not accurately reflect his true criminal history. For the same reasons, a downward departure in offense level is warranted, as it would be unfair to consider those two concurrent eight-year old convictions as the basis for a four-level increase in base offense level. Such departure would not provide Mr. Santiago with a double undeserved windfall, as the same facts that made a criminal history category of VI inappropriate make a base offense level of 24 inappropriate. Now that the Guidelines are advisory rather than mandatory, the instant case provides an excellent example of one in which such flexibility should be employed.

Had the defendant been sentenced with a criminal history category of VI, it would have been unreasonable and unfair. To impose a sentence so much more severe than he would have faced in state court is similarly unfair. Defendant respectfully requests that the Court resentence him closer to and perhaps within the 24 to 60 month sentencing range he would have faced had

---

[1] While the presentence report indicates a charge or conviction of "sale of a controlled substance," the narrative report of both arrests indicates a charged of possession with intent to sell.

[2] At sentencing, defense counsel pointed out that the cocaine arrest was made with three other individuals, and that the defendant was involved only with the marijuana recovered on that occasion (sentencing at 10).

-5-

he been prosecuted in Connecticut State Court. In the alternative, he should be resentenced within the Guidelines range for 22 levels (base offense level of 20) rather than 26 (base level of 24). That would reduce his sentencing range to 63 to 78 months.

Dated:          November 28, 2005

Respectfully Submitted,

DAVID SAMEL
DS 7277

## CERTIFICATE OF SERVICE

DAVID SAMEL, an attorney admitted to practice in the courts of New York State, hereby affirms under penalty of perjury that on November 28, 2005, he served the attached document upon the Office of the United States Attorney by enclosing same in a post-paid envelope addressed to Robert M. Spector, Esq., United States Attorney's Office, 450 Main Street, Hartford, CT 06103, and depositing same in an official depository of the U.S. Postal Service within New York State.

Dated:     New York, New York
            November 28, 2005

DAVID SAMEL